# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 05-4184

———————

United States of America,                    *
                                             *
                    Appellee,                *
                                             *    Appeal from the United States
            v.                               *    District Court for the
                                             *    District of Nebraska.
Charles E. Wiig,                             *    [UNPUBLISHED]
                                             *
                    Appellant.               *

———————

Submitted:   April 20, 2006
    Filed:   August 11, 2006

———————

Before WOLLMAN, HANSEN, and BENTON, Circuit Judges.

———————

PER CURIAM.

      Charles Wiig was found guilty by a jury of distributing less than fifty grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1), and was sentenced by the district court[1] to 262 months' imprisonment. On appeal, he challenges the sufficiency of the evidence supporting his conviction and the reasonableness of the sentence. We affirm.

---

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

**I.**

On September 23, 1998, Richard Haseloh, a Nebraska State Patrol narcotics investigator, supervised a controlled methamphetamine buy at Wiig's apartment. George Brown, who agreed to cooperate with the state in exchange for a reduction in criminal charges against him, told the investigator that he had arranged to purchase a half ounce of methamphetamine from Wiig for $550. Investigator Haseloh provided Brown with the money and equipped him with an audio transmitting device to record the transaction. Investigators then watched as Brown entered Wiig's apartment. No one entered or left the apartment while Brown was inside.

The audio recording of the tape indicates that Brown asked a person if the price was still $550 for a half ounce of methamphetamine. At that person's insistence, Brown agreed to use some methamphetamine. After Brown left the apartment, he turned over to investigators methamphetamine that he had purchased in the apartment. Wiig was subsequently arrested. On September 28, 1998, he called his mother, Mary McIntosh, and asked her to clean out his apartment. McIntosh went with a friend to clean the apartment, where the friend found a yellow rock-like substance in a mattress. Suspecting that the substance was either drugs or dried cheese, McIntosh threw it into a dumpster. The next day, she returned to the apartment to continue cleaning and discovered approximately $3600 in cash in a suitcase. McIntosh testified that the substance and the money were in a bedroom that had once been occupied by Wiig's roommate, but she did not know whether the roommate was still living in the apartment.

On November 19, 1998, Wiig was indicted for conspiracy to distribute and possess with the intent to distribute methamphetamine and possession with intent to distribute methamphetamine. After pleading not guilty, he was released to a halfway house pending trial. On March 2, 1999, he failed to return to the halfway house. Wiig fled from the law for more than six years before he was finally arrested on April

19, 2005. While he was a fugitive from justice, he wrote a letter to his mother admitting ownership of the items and estimating that she had thrown out drugs worth between $3000 and $6000.

The cooperating witness, Brown, did not testify at Wiig's trial, but McIntosh said that the voice on the audio recording "sounds like Chuck [Wiig]." A police officer testified about an incident in Lexington, Nebraska, in which Wiig fled from the officer. When the officer tackled Wiig, he found a small plastic bag of methamphetamine lying near Wiig. Wiig was charged with attempted possession of methamphetamine. A Nebraska State Patrol officer testified that he supervised three other controlled methamphetamine buys involving Wiig and that Wiig had been convicted of distributing a controlled substance in Hall County, Nebraska, based on those transactions.

Following Wiig's conviction and the denial of his motion for a new trial, the presentence report (PSR) placed him at a base offense level of 18. A two-level enhancement for obstruction of justice increased the base offense level to 20. Because Wiig was designated as a career offender, however, the offense level was enhanced to 34. The district court ultimately determined that Wiig should be placed in criminal history category VI, which resulted in an advisory guideline range of 262 to 327 months' imprisonment. As noted above, the district court sentenced Wiig to 262 months' imprisonment.

## II.

We review *de novo* the sufficiency of the evidence, viewing the evidence in the light most favorable to the verdict and upholding it if, based on the all of the evidence and taking all reasonable inferences in favor of the verdict, any reasonable juror could find the defendant guilty beyond a reasonable doubt. United States v. Roberson, 439 F.3d 934, 941-42 (8th Cir. 2006). Wiig argues that there is not

sufficient evidence to prove beyond a reasonable doubt that he was the man in his apartment who sold the methamphetamine to Brown. He points out that his mother did not unequivocally identify his voice on the recording, and that at some point there had been a roommate living in the apartment. We conclude, however, that the circumstantial evidence was sufficient to allow a reasonable juror to find Wiig guilty beyond a reasonable doubt of distributing methamphetamine. Cf. United States v. Resnick, 745 F.2d 1179, 1185-86 (8th Cir. 1984) (upholding conviction for cocaine distribution based on "compelling circumstantial evidence" even though the police did not witness the actual transactions).

Several pieces of circumstantial evidence point to Wiig's guilt. He occupied the apartment where the drug transaction took place, and Brown told the officers that he was going to buy the methamphetamine from Wiig. Wiig's mother indicated that the voice of the dealer on the recording sounded like Wiig's. Following his arrest, Wiig asked his mother to clean the apartment, an indication that he was at that time solely in control of the apartment and not jointly occupying it with a roommate. His mother found a suitcase full of money and a substance that Wiig later identified in a letter to be drugs belonging to him. Fifth, Wiig fled for six years in an attempt to avoid being brought to book, circumstantial evidence of his consciousness of guilt. United States v. Melson, 7 F.3d 750, 752 (8th Cir. 1993). In light of this evidence, a reasonable juror could find beyond a reasonable doubt that Wiig was the person who sold methamphetamine to Brown on September 23, 1998.

## III.

Our review of the reasonableness of a sentence is akin to abuse of discretion review. United States v. Haack, 403 F.3d 997, 1003-04 (8th Cir. 2005). A sentence within the guideline range is presumptively reasonable. United States v. Lincoln, 413 F.3d 716, 717 (8th Cir. 2005). To rebut that presumption, Wiig must show that the district court failed to consider a relevant factor that should have received significant

weight, gave significant weight to an improper or irrelevant factor, or otherwise committed a clear error of judgment. United States v. Davidson, 437 F.3d 737, 741 (8th Cir. 2006).

The only argument that Wiig makes concerning the unreasonableness of the sentence is a cursory claim that the district court failed to adequately consider the fact that his crime was not a violent crime and that his father was incarcerated during most of Wiig's childhood. These facts were before the district court, however, and there is no evidence that they were not considered. Moreover, given Wiig's status as a career offender and his six-year flight from the law, we cannot say that he has rebutted the presumption that his guideline sentence is reasonable.

The judgment is affirmed.

_____